236 F.2d 423
 KIEKHAEFER CORPORATION, Appellant,
v.
WILLYS-OVERLAND MOTORS, Inc., (Willys Motors, Inc., Assignee, Substituted), Appellee.
WILLYS-OVERLAND MOTORS, Inc., (Willys Motors, Inc., Assignee, Substituted), Appellant,
v.
KIEKHAEFER CORPORATION, Appellee.
 Patent Appeals No. 6210.
 Patent Appeals No. 6211.
 United States Court of Customs and Patent Appeals.
 June 20, 1956.
 Rehearing Denied in No. 6210 September 27, 1956.
 
 Elwin A. Andrus and Andrus & Sceales, Milwaukee, Wis. (Ernst W. Schultz, Milwaukee, Wis., Francis C. Browne, Mead, Browne, Schuyler & Beveridge, Washington, D. C., of counsel), for Kiekhaefer Corp.
 Carl F. Schaffer, Toledo, Ohio, for Willys-Overland Motors, Inc., etc.
 Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON (retired), Judges.
 WORLEY, Judge.
 
 
 1
 Involved here are cross appeals from the decision of the Assistant Commissioner of the United States Patent Office in Trade-Mark Interference No. 4626 between an application filed February 18, 1950, by Willys-Overland Motors, Inc., hereafter referred to as Willys, for registration of the word "Hurricane" as a trademark for "Internal Combustion Engines and Structural Parts Thereof," and an application filed December 26, 1950, by the Kiekhaefer Corporation for registration of the same word as a trademark for "Outboard Motors, Internal Combustion Engines for Industrial Use, and Parts Thereof." The Examiner of Interferences adjudged that Kiekhaefer was the first user of the mark and entitled to registration thereof, and that Willys was not entitled to registration. The Assistant Commissioner, while apparently agreeing that Kiekhaefer was the prior user of the mark, held that "Kiekhaefer is entitled to registration of `Hurricane' for outboard motors and parts therefor; and Willys is entitled to registration of `Hurricane' for automotive vehicles and parts therefor," and that "The applications should be amended accordingly."
 
 
 2
 Kiekhaefer filed Appeal No. 6210 from the decision of the Assistant Commissioner, alleging it is entitled to registration without restricting its application to outboard motors and parts therefor, and that Willys is not entitled to any registration of the mark "Hurricane." Willys filed Appeal No. 6211, alleging that Kiekhaefer should be denied registration of the mark for outboard motors and parts therefor. We shall consider both appeals in a single opinion.
 
 
 3
 Willys did not take testimony and is accordingly restricted to the filing date of its application, February 18, 1950, for its first use of the mark "Hurricane." Keikhaefer took testimony showing use of that mark, in combination with the name Kiekhaefer and the trademark "Mercury," as early as November 1949. That was held by both the examiner and the Assistant Commissioner to be a trademark use of the word "Hurricane," but Willys contends the word was used by Kiekhaefer as a grade mark only, denoting a particular kind of outboard motor. That contention forms the sole issue in Appeal No. 6211. Since certain of the issues in Appeal No. 6210 will become moot if the contention of Willys in Appeal No. 6211 is accepted, Appeal No. 6211 will be considered first.
 
 
 4
 Appeal No. 6211.
 
 
 5
 As above stated, the issue here involves the manner in which the word "Hurricane" was used by Kiekhaefer. Guy S. Conrad, Vice-President of the Kiekhaefer Corporation, testified that in 1949 a new model of outboard motor was introduced and that "decision was made at management level to apply the word "Hurricane" as a trademark to this particular model of outboard motor." He further stated that the first such motor was shipped November 9, 1949, bearing a name plate which included Kiekhaefer's registered trademark comprising the word "Mercury" and a design, with the name "Kiekhaefer" at one side of that trademark and the word Hurricane, in quotation marks, at the other side. The name plate also bore the notations "Model KG7" and "Super 10."
 
 
 6
 Conrad testified to a continuing use of "Hurricane" after 1949, in association with the name "Kiekhaefer" and the Mercury trademark. The record shows that the most common "Hurricane" motor was the KG7, but that there was also a KG4 Hurricane motor. It is clear that the mark "Hurricane" was applied only to the particular type of motor designated KG, and that it served to distinguish motors of that type from other Kiekhaefer models and thus functioned to indicate grade, but that fact is not necessarily conclusive that the word was not also a trademark.
 
 
 7
 The general relationship between grade marks and trademarks is brought out by the following quotations:
 
 
 8
 "The same trade-mark may be used on several grades of goods (Armour [& Co.] v. Louisville Provision Co., 315 O.G. 196; 1923 C.D. 390; [6 Cir.], 283 F. 42, and several trade-marks may be used upon one grade of goods (United Lace [& Braid Mfg.] Co. v. Barthels [Mfg. Co.], [D.C.], 221 F. 456), and a mark may be at the same time a trade-mark and a grade mark." Shoemaker on Trade-Marks, page 221.
 
 
 9
 "Different trade-marks may be used on different grades of the same product, provided they are so used as to indicate origin as well as grade, and their primary meaning is that of origin." Nims, Law of Unfair Competition and Trade-Marks, Fourth Edition, page 529.
 
 
 10
 "* * * With regard to the second problem, a trade-mark will not be invalidated merely because it indicates grade or quality in addition to origin. The question whether the mark is to be regarded as one or the other or both depends upon the facts; it is not a matter of law." Callman, Law of Unfair Competition and Trade-Marks, Second Edition, page 1041.
 
 
 11
 The foregoing indicate that the question of whether a mark which is used to designate a particular grade or kind of goods is also a trademark must be determined on the basis of the particular facts of each case. That principle has been applied by this court. For example, in Richard Hellmann, Inc., v. Oakford & Fahnestock, 54 F.2d 423, 19 C.C.P.A., Patents, 816, it was held that "Blue Ribbon" had been used as a trademark because, although used on goods of a particular grade, it also denoted origin; while in The Coschocton Glove Co. v. Buckeye Glove Co., 90 F.2d 660, 24 C.C. P.A., Patents, 1338, it was held that the word "Buckeye" had not been used as a trademark, but as a grade mark only.
 
 
 12
 The witness Conrad also testified it was the intention of the Kiekhaefer Corporation to use "Hurricane" as a trademark for a particular model of outboard motor, that is, as both a grade mark and a trademark, and the evidence appears to be consistent with that testimony. The word "Hurricane" was applied to the motors and the cartons in which they were shipped in the manner customary in the use of trademarks, and, although it was applied only to motors of a particular style, it was not the only, or the most specific style designation, since there were at least two "Hurricane" motors, one of which was identified as KG7 and the other as KG4. It is true that "Hurricane" was used in conjunction with the name "Kiekhaefer" and the "Mercury" trademark and, while not strictly essential to showing the source of the motors, we are of the opinion it served as an additional means of indicating origin.
 
 
 13
 Willys relies on the Coschocton case, supra, which is similar to the instant one in that it involved the use of the word "Buckeye" on goods of a certain style, in addition to a recognized trademark. The circumstances surrounding such use are not set forth in detail in the decision, but it appears that "Buckeye" was the only indication of style on the goods, and there is nothing to indicate there was any intention by anyone that it should serve to indicate origin. That case, therefore, is not directly in point here.
 
 
 14
 We are of the opinion that the record, considered in its entirety, supports the concurrent holdings of the examiner and the Assistant Commissioner that Kiekhaefer began to use the word "Hurricane" as a trademark for outboard motors in November 1949, prior to the date to which Willys is restricted. Kiekhaefer, therefore, is entitled to registration of that word as a trademark for outboard motors and parts therefor. Accordingly, the decision of the Assistant Commissioner is affirmed.
 
 
 15
 Appeal No. 6210.
 
 
 16
 This appeal raises two issues; namely, whether the Assistant Commissioner properly required that Kiekhaefer's application be restricted to outboard motors and parts thereof, and whether Willys is entitled to registration of the word "Hurricane" as a trademark for automotive vehicle engines and parts therefor, to which goods its application was restricted in accordance with the requirement of the Assistant Commissioner.
 
 
 17
 In the Kiekhaefer application as it now stands, the goods for which registration of the trademark "Hurricane" is sought are listed as "Outboard Motors, Internal Combustion Engines for Industrial Use, and Parts Thereof." The record contains no evidence of use of the "Hurricane" mark by Kiekhaefer on any engine other than those forming parts of outboard motors, but it is contended by Kiekhaefer that "a substantial number of these engines were undoubtedly placed in industrial use as outboard motors to propel boats in surveying, logging, fishing and similar industries."
 
 
 18
 In our opinion an outboard motor would not be properly described as an internal combustion engine since it includes, as a unitary device, not only an engine, but a propellor and associated parts, and means for attaching the device to a boat. Accordingly, use of a mark on an outboard motor would not constitute use on an internal combustion engine. This distinction appears to be recognized in the separate listing of outboard motors and internal combustion engines in the Kiekhaefer application.
 
 
 19
 We are of the opinion that use of a trademark on an outboard motor on a boat used for industrial purposes does not constitute use on an "internal combustion engine for industrial use," and that the Assistant Commissioner properly required restriction of the Kiekhaefer application to outboard motors and parts therefor.
 
 
 20
 It is urged by Kiekhaefer that Willys should be denied any registration of the word "Hurricane" because of an allegedly fraudulent affidavit submitted by one official of Willys, stating that Willys sold "Hurricane" engines only as parts of automotive vehicles, or replacements for vehicle engines. After the affidavit was filed, Kiekhaefer called attention to advertisements showing that Willys had used "Hurricane" on other types of engines. As part of the brief for Willys here, there is included a second affidavit by that official explaining that the first one was incorrect because, through inadvertence, he did not obtain complete information, and that Willys had actually used "Hurricane" to a limited extent on engines other than those of automotive vehicles. We find no sufficient reason for doubting the second affidavit, or for holding the first one to have been fraudulent.
 
 
 21
 As above noted, the Willys application has now been limited to engines and parts therefor, for automotive vehicles, and the issues here must be determined on the basis of the applications involved rather than the actual way in which the parties used the marks. Hat Corp. of America v. John B. Stetson Co., 223 F.2d 485, 42 C.C.P.A., Patents, 1001; Intercontinental Mfg. Co., Inc., v. Continental Motors Corp., 230 F.2d 621, 43 C.C.P.A., Patents, 841. The right of Willys to the registration sought is, therefore, dependent on whether outboard motors and internal combustion engines for automotive vehicles are so related that the concurrent use of the trademark "Hurricane" on them by the respective parties would be likely to result in confusion or mistake or to deceive purchasers.
 
 
 22
 The question whether confusion is likely to result from use of particular marks on particular goods is one which must be decided largely on the basis of the specific circumstances of each individual case. Here the marks are identical and the issue is whether a prospective purchaser, seeing the same mark on an outboard motor and an engine for an automotive vehicle would be likely to assume that they emanated from the same source.
 
 
 23
 It is to be noted, in the first place, that the goods involved are comparatively expensive and are not ordinarily purchased casually, but only after rather careful consideration. In such cases confusion is less likely than where the goods are cheap and are purchased casually. Intercontinental Mfg. Co., Inc., v. Continental Motors Corp., supra.
 
 
 24
 It is also to be noted that outboard motors for boats and engines for automotive vehicles are not normally sold in the same manner or through the same channels. Outboard motors are commonly purchased as units by the ultimate consumers, while automotive vehicle engines are normally acquired by consumers only as parts of vehicles.
 
 
 25
 There is of record an argument filed on behalf of Kiekhaefer in an earlier application for trademark registration which had been rejected on the basis of a prior registration of a similar mark for gasoline motors. The Kiekhaefer application was amended in response to the rejection to limit it to outboard motors and parts thereof, and includes the following statement:
 
 
 26
 "The examiner will recognize at once the fact that outboard motors, although including an engine, are not considered or sold as gasoline motors, as such, and that applicant is, accordingly entitled to the registration for which he has applied."
 
 
 27
 It would seem that the argument contained in the foregoing quotation applies with greater force to the present situation, in which outboard motors are to be compared with engines for automotive vehicles, rather than with gasoline engines broadly.
 
 
 28
 The record also shows that for some time prior to the taking of testimony in the instant case there was concurrent use of the name "Mercury" by Kiekhaefer on outboard motors and by the Ford Motor Company on engines for automotive vehicles. The witness Conrad stated he did not know of any confusion resulting from such use.
 
 
 29
 Upon consideration of all the circumstances of this case, we agree with the Assistant Commissioner that Willys is entitled to register the word "Hurricane" as a trademark for engines for automotive vehicles and parts therefor.
 
 
 30
 The decision of the Assistant Commissioner is affirmed as to both Appeal No. 6210 and Appeal No. 6211.
 
 
 31
 Affirmed.
 
 
 32
 JACKSON, Judge, retired, recalled to participate.
 
 
 33
 O'CONNELL, J., because of illness, did not participate in the hearing or decision of this case.