47 CCPA

**CALIFORNIA STUCCO PRODUCTS OF NEW ENGLAND, INC.**

v.

**MAAS & WALDSTEIN CO.**

Patent Appeal No. 6429.

United States Court of Customs and Patent Appeals.

Dec. 2, 1959.

Worley, Chief Judge, dissented; Johnson, Judge, dissented in part.

Porter, Chittick & Russell, Boston, Mass. (Cedric W. Porter, Boston, Mass., of counsel), for appellant.

Harry C. Bierman, New York City (Jordan B. Bierman, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and JOHNSON (retired), Associate Judges [original argument before WORLEY, Acting Chief Judge, and RICH, MARTIN, and JOHNSON (retired), Associate Judges].

MARTIN, Judge.

This appeal is from a decision of the Commissioner of Patents, acting through the Assistant Commissioner, affirming the decision of the Examiner of Interferences sustaining the opposition by

Maas & Waldstein Co., appellee here, to the applications for registration of "Plexichrome"[1] for a "finish coating for asphalt and concrete surfaces," and for "Plexicolor"[2] for "paint for masonry walls." Opposer, whose earlier use is conceded, owns the trademark "Plextone"[3] for "industrial coating finishes for producing multiple-colored film coatings."

The Assistant Commissioner found that the products identified by the marks in issue each "fall in the broad category of 'paint products' * * *" and reach the same prospective purchasers through the same trade channels. Upon considering the marks themselves, the Assistant Commissioner held that despite certain aural and visual differences, "they stimulate almost identical mental associations," and that confusion of prospective purchasers was therefore likely, when applied to the goods in question.

Applicant urges that its coatings comprise aqueous dispersions of acrylic resins produced only in monotone colors whose chemical nature and use is "distinctly different" from the multi-colored enamel type of paint product bearing opposer's mark. It further contends that the prefix "Plexi" is in wide use on acrylic resinous products and other paints, dies and chemical products, as evidenced by several registrations to third parties introduced in evidence, and that therefore prospective purchasers would be less likely to be confused between trademarks comprising the common prefix "Plex" or "Plexi."

Applicant further contends that the prefix "Plex" is descriptive of the goods in controversy. This contention is based upon various dictionary definitions referring to that syllable as a combining form pertaining to a weaving or twining together, connoting complication or complexity, as in the complexity of color associated with opposer's multi-color product.

Opposer has moved to strike from the record applicant's exhibits appended to its "Request for Reconsideration" of the decision of the Examiner of Interferences, and those exhibits attached to "Applicant's Reply" to the examiner's denial of such "Request * *." The motion is herewith granted to the extent that those matters not introduced in evidence prior to the close of testimony have not been considered in reaching our decision herein, namely Exhibits O to W inclusive, and the matter submitted therewith.

Regardless of the specific compositions of applicant's and opposer's products, we agree with the Assistant Commissioner that since they are used as finish coatings of various surfaces, they all come within the general category of paint products. In addition, there is nothing in appellant's applications which limits the marks set forth therein to "acrylic emulsion paints," though the accompanying specimens indicate the current marketing of a "plexiglass type dispersion" under each mark set forth. Since the likelihood of confusion must be determined on the basis of the "goods covered in appellant's applications," Intercontinental Mfg. Co., Inc. v. Continental Motors Corp., 230 F.2d 621, 43 CCPA 841, the present composition of those goods, not disclosed in the applications, is not controlling. Cf. Meyer Chemical Co. v. Anahist Co., Inc. (Warner-Lambert Pharmaceutical Co., Assignee, Substituted), 263 F.2d 344, 46 CCPA 784.

Furthermore, although the surfaces to which the products may be applied are identical in some instances and vary in others, all are so closely related that for the purpose of resolving the issues in this controversy, we find that no significant distinction exists. The opposer's witness testified that its products are sold through two channels of distribution; the first by company representatives who solicit business from

---

1. Application Serial No. 655,954.

2. Application Serial No. 655,955.

3. Registration No. 547,125.

manufacturers of furniture, television sets, caskets and similar articles; and the second, by franchised distributors who sell to building and painting contractors. The witness testified further that the opposer company does not sell directly to the "home user." However, the company does suggest a retail price which, we presume, is for the guidance of the distributor in the retail trade. With reference to the applicant, the stipulation of record states that "The applicant's coatings and finishes including the coating identified by the trademark 'Plexicolor,' are sold through established paint dealers and distributors, and to paint contractors, institutions, commercial users and home owners directly as well." In view of this evidence we conclude that the products of both parties move generally in the same channels of trade.

As to the words themselves, applicant contends that the prefixes "Plex" and "Plexi" are weak since marks containing those syllables are commonly registered in the paint and related trades. It has introduced a number of third party registrations in endeavoring to support this proposition. Only one,

"Plexite," is registered for paint products. We do not believe that this one registration for a paint product substantiates the contention that such prefixes are descriptive of any material in this field. Considering the words "Plextone," "Plexichrome" and "Plexicolor" in their entireties, we agree with the conclusion of the Assistant Commissioner that the words "look and sound somewhat different but they stimulate almost identical mental associations" and, since the record discloses extensive advertising of "Plextone" by the opposer in connection with the promotion of its product over a five-year period and also reveals a large volume of sales during this same period, and since a substantial doubt is raised as to the likelihood of public confusion, such factors require this court to resolve that doubt in favor of the first user.

For these reasons we affirm the decision of the Assistant Commissioner.

Affirmed.

WORLEY, C. J., dissents.

JOHNSON, J., concurs as to "Plexichrome" and dissents as to "Plexicolor."