**BLANCHARD & CO., Inc.**
**and**
**Blanchard Importing & Distributing Co., Inc., Plaintiffs,**

**v.**

**CHARLES GILMAN & SON, INC., Societe E. Blanchard et Fils, and Monsieur Henri Wines, Ltd., Defendants.**

**Civ. A. No. 63–78.**

United States District Court
D. Massachusetts.

March 31, 1965.

Harold E. Cole, Boston, Mass., for plaintiff.

Edward F. Levy, Liberman & Levy, New York City, and William H. Taylor, Jr., Boston, Mass., for defendants.

CAFFREY, District Judge.

1. This is a civil action arising under the trademark laws of the United States, 15 U.S.C.A. § 1051 et seq. Jurisdiction is based on 28 U.S.C.A. § 1338. Plaintiffs are Blanchard & Co., Inc. and Blanchard Importing & Distributing Co., Inc., corporations organized and existing under the laws of the Commonwealth of Massachusetts. Each has a usual place of business in Boston, Massachusetts, and each is engaged in the sale of alcoholic beverages. Defendants are Charles Gilman & Son, Inc., a Massachusetts corporation with a usual place of business in Cambridge, Massachusetts; Societe E. Blanchard et Fils, a corporation organized and existing under the laws of the Republic of France, with a usual place of

business at St. Lambert du Lattay, France; and Monsieur Henri Wines, Ltd., a corporation organized and existing under the laws of the State of New York with a principal place of business in Brooklyn, New York. Societe E. Blanchard et Fils is a producer, bottler, and distributor of wines, and Monsieur Henri Wines, Ltd. is and has been since 1951 the exclusive importer in the United States of the wines bottled and distributed by Societe E. Blanchard et Fils. The case was tried to the Court.

2. Blanchard Importing & Distributing Co., Inc. commenced to sell alcoholic liquor in both intrastate and interstate commerce, either by itself or by its licensee, including whisky, wines and champagne, on June 27, 1961, and has continued to do so up to the time of trial. Such sales are made in Massachusetts, Rhode Island, and Connecticut. Blanchard & Co., Inc., was organized as a Massachusetts corporation in 1934 and has sold alcoholic beverages only at retail in Boston, Massachusetts, since that time.

3. Blanchard Importing is the owner of United States trademark registration number 734,309 issued July 10, 1962, United States trademark registration number 738,341 issued September 25, 1962, and United States trademark registration number 740,323 issued November 6, 1962, each of which is in effect and in good standing, has been used in interstate commerce, and applied to bottles containing alcoholic beverages.

4. Blanchard & Co., Inc., has sold alcoholic beverages in Massachusetts continuously since 1934. It has built up a substantial volume of business, commonly and favorably known as "Blanchard" and "Blanchard's," in the Greater Boston metropolitan area. Blanchard Importing has shared in the favorable reputation and good will that has been built up in the Greater Boston area for the names Blanchard and Blanchard's.

5. The three trademarks referred to in paragraph 3, which include "Blanchard's," have been applied by both plaintiffs to wines, champagne, whisky, vodka, and other alcoholic liquors. The trademark "Blanchard," standing alone, has been applied to champagne and wine sold by Blanchard Importing in intrastate commerce in Massachusetts and in interstate commerce.

6. Plaintiffs have acquired and enjoy a valuable reputation and good will in the Eastern part of Massachusetts for the business name "Blanchard" and "Blanchard's." This has been acquired by extensive use of advertising, store displays, promotions to liquor dealers, and other sales devices.

7. Defendant Monsieur Henri Wines, Ltd., is engaged in the sale of alcoholic beverages and at least by the time of the trial of the instant case had full knowledge of plaintiffs' trademark and business names "Blanchard" and "Blanchard's." Monsieur Henri Wines, Ltd., has sold alcoholic beverages in New York, Massachusetts, and in many other states, in bottles bearing the trade names "E. Blanchard et Fils," "Domaine Blanchard," and "Blanchard."

8. In addition to the three trademarks described in paragraph 3 above, Blanchard Importing has registered the trademark "Blanchard" on the supplemental register of the United States Patent Office. This registration, bearing the number 748,258, was obtained April 16, 1963, for use on wines and champagnes in Class 47. A label reading "Blanchard's 100% Pure California Wine—Sherry" was approved under the Federal Alcohol Administration Act on October 10, 1952. This label indicated that the Sherry was bottled expressly for Blanchard & Company.

9. Pursuant to the provisions of Mass. G.L. ch. 110, sec. 8, Blanchard & Co. registered a label reading "Blanchard's 874 Brand Blended Whisky" on October 30, 1952; a label reading "Blanchard's 100% Pure California Wine—Sherry" on November 12, 1952, and a label reading "Blanchard's MARQUEE Bourbon Whisky or Blend" on October 30, 1952.

10. Plaintiffs seek recovery herein both under the Lanham Act on the basis of their federally registered trademarks

and in a count best described as setting forth an alleged cause of action for common law unfair competition. Plaintiffs seek an accounting and injunctive and other relief against defendants.

11. It was stipulated during the course of the trial that defendant Charles Gilman & Son, Inc., has ceased to handle any of the allegedly offending products and that no relief is sought against Gilman. The two intervening defendants, Societe E. Blanchard et Fils and Monsieur Henri Wines, Ltd., have counterclaimed for a cancellation of plaintiffs' trademark registrations and other relief.

Re the Lanham Act Claim

12. Plaintiffs' registrations entitle them to certain evidentiary advantages in the trial of this case. 15 U.S.C.A. § 1057 (b) provides:

"A certificate of registration of a mark upon the principal register * * * shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein."

And see 68 Harv.L.Rev. 814, 828 (1955).

13. Defendants' principal line of attack on the validity of these registrations is an attempt to show that they are invalidated by defendants' use in commerce of the word "Blanchard" as a trademark prior to the first such use by the plaintiffs as indicated by the dates of plaintiffs' registrations. Each of plaintiffs' registrations indicates that the date of first use in commerce for that registration was June 27, 1962. Defendants have attempted to establish that various forms of the word "Blanchard" were used by Societe E. Blanchard et Fils on labels prior to June 27, 1962.

■ 14. I find that the evidence does not establish any use of the name "Blanchard" by either defendant as a trademark prior to plaintiffs' first use in commerce of the word "Blanchard," and I find that defendants' exhibits 1–A through 3–A (which are labels bearing the word "Blanchard" combined with various other words or names) do not tend to identify directly the goods to which the labels would be attached. On the contrary, I find that defendants' labels insofar as they contained the name "Blanchard" operated primarily merely to identify the business unit from which the wines would emanate. I find that the use of the name "Blanchard" on these labels by defendants served only to name the producer of the goods and not to identify or denominate or signify the goods themselves. These labels contrast sharply with defendants' Exhibit 4–A, which is the first in a series of labels from which can be found an attempt on the part of the defendants to downgrade the other material in the earlier labels and to give prominence only to the name "Blanchard." I find that this label (4–A) did not come into use by defendants until after the date of plaintiffs' first use in commerce and I find no merit in defendants' claim to have been the first to use the name "Blanchard" or "Blanchard's" as a distinctive label, trademark, or trade name.

15. I do not credit the hearsay testimony to the effect that the labels admitted in evidence as Exhibits 34–37 were used by E. Blanchard et Fils on shipments into the United States some time between 1933 and 1951, which years antedate the distributor relationship between Monsieur Henri Wines, Ltd. and Societe E. Blanchard et Fils.

■ 16. Despite plaintiffs' enjoyment of the statutory presumption quoted above and despite defendants' failure to show their use of the word "Blanchard" at a time prior to plaintiffs' use thereof, plaintiffs may not prevail on the Lanham Act count because it appears that plaintiffs' purported trademarks do not satisfy the requirements of 15 U.S.C.A. § 1052 (e)(3), which provides in pertinent part:

"No trademark by which the goods of an applicant may be distinguished from the goods of others shall be refused registration on the principal

register on account of its nature unless it * * * (e) consists of a mark which * * * (3) is primarily merely a surname."

17. I find and rule that plaintiffs' three trademarks are primarily merely a surname, that the material other than the word "Blanchard" contained in each of the three marks does not obviate the bar of Section 1052(e) (3), and that consequently these three trademarks were improperly issued, should be, and hereby are, cancelled.

18. In so ruling I have in mind that the totality of the evidence adduced at the trial, even aided by the statutory presumption, fails to establish that plaintiffs' registered trademarks have become distinctive of plaintiffs' goods in commerce. Putting it another way, I am not satisfied that plaintiffs' trademarks have acquired any secondary meaning in interstate commerce as that term is used in the cases interpretive of the Lanham Act.

19. The most that the record in this case establishes is that plaintiffs have acquired a secondary meaning for their trademarks only in intrastate commerce in the metropolitan Boston area. The mere fact that the plaintiff Blanchard Importing has engaged in a limited number of shipments into Rhode Island and Connecticut, and possibly into Vermont, while probative of the fact that Blanchard Importing was engaged in interstate commerce, falls far short of proving that plaintiffs' marks have become distinctive of plaintiffs' goods in interstate commerce.

20. For these reasons, plaintiffs may not prevail on the Lanham Act count. The fact that plaintiffs may not prevail under the Lanham Act count is not to be taken as an expression of any opinion by this Court that the defendants are entitled to register any form of the word "Blanchard" as a trademark.

Re the Common Law Count

21. Despite the invalidity of plaintiffs' federal registrations, there exists pendent jurisdiction in this court under 28 U.S.C.A. § 1338(b), on the state of this record. The rights of the parties are to be determined under applicable State law. See Flexitized Inc. v. National Flexitized Corp., 335 F.2d 774, 780–781 (2 Cir. 1964), cert. denied March 1, 1965, 85 S.Ct. 899.

22. It should be noted that plaintiffs have not been guilty of laches in the protection of their trademarks against infringement or unfair competition.

23. The evidence establishes, and I find, that the similarity between the trademarks used by plaintiffs and the trademarks used by defendants is so great that the beverage-consuming and retail purchasing public are likely to be confused, mistaken, and deceived as to whether they are buying plaintiffs' products on the one hand or whether they are buying products of the defendants on the other hand.

24. I further find that the downgrading of the notation "E. Blanchard et Fils" as a prominent part of the labels and the placing of the word "Blanchard" alone as the prominent "eye-catcher" on the labels is a very recent development which has taken place under the aegis of the defendant Monsieur Henri Wines, Ltd. It is this recent change in the format of the labels which has caused the confusion referred to in the preceding paragraph. The fact that E. Blanchard et Fils in years gone by distributed its product in bottles bearing labels which clearly identified the product as emanating from E. Blanchard or E. Blanchard et Fils, St. Lambert du Lattay, France, affords no defense to defendants' change of label so as to use the word "Blanchard" alone, capitalized and prominently displayed, as the dominant word on the label.

25. I find that the first shipment by defendants into Massachusetts of wine bottles bearing the name "Blanchard" on their labels occurred in March of 1955, but I further find that well prior to this time, at least as early as February of 1947, plaintiff Blanchard & Co. was using the name "Blanchard" on quarts of Port, Sherry and Muscatel wines. I base this

finding on the sheaf of pages from the Boston Evening American for various dates in February 1947 which were placed in evidence as Plaintiffs' Exhibits H and J, and on the testimony of the witness John Carita.

26. I also find that the name "Blanchard," as used in this denominative or trademark fashion, acquired "secondary meaning" in the Greater Boston area. I so conclude on the basis of the length of time (at least since 1947) that "Blanchard" labels have been used by plaintiffs in a denominative fashion and on the basis of the local prominence which the name "Blanchard" has gained over many years through plaintiffs' extensive advertising and promotional efforts.

27. Basically there are two Blanchard companies in Massachusetts. One is Blanchard & Co., Inc., which is owned largely by its Treasurer, Mary Corey. Mary Corey is the wife of the witness John Corey. John Corey is the President, Treasurer, and principal stockholder of Blanchard Importing & Distributing Co., Inc. This latter company was not organized until about 1961. Apparently there was no formal written assignment to it of the trademark rights which I find to have been acquired by Blanchard & Co. with regard to its private labels by its retail activities. However, I infer that it was the understanding, purpose and intention of the owners and management of Blanchard & Co. to transfer or delegate to Blanchard Importing whatever trademark rights the retail corporation acquired since the wholesale corporation was set up in order not only to expand the sales of goods with the Blanchard brand name but, also, to supply Blanchard's retail operations.

28. Although the evidence might have been presented more clearly, I rule that Blanchard Importing was sufficiently related to (in terms of its function and in terms of the close relationship of the stockholders of Blanchard Importing and Blanchard & Co.) and sufficiently associated with Blanchard & Co. that the transfer of the trademark rights of Blanchard

& Co., under these peculiar circumstances, was effective and did not run counter to the basic rationale of the rule that the right to the use of a trademark cannot be transferred in gross.

29. Alternatively, I rule that at the least Blanchard & Co. has not forfeited or abandoned its trademark rights even if no effective transfer of them to Blanchard Importing occurred.

30. The evidence clearly indicates that plaintiffs were selling wines and alcoholic beverages in Massachusetts under the name "Blanchard" or "Blanchard's" prior to the time when defendants commenced so to do, and the evidence indicates that defendants unless enjoined will continue so to do, with the resultant confusion and deception referred to above.

31. In the light of the fact that the evidence fails to show that plaintiffs have any given amount of business outside of Massachusetts, or that their name or marks have acquired secondary meaning outside of Eastern Massachusetts, no relief relating to States other than Massachusetts is warranted.

32. With reference to plaintiffs' prayer for an accounting, money damages, and attorneys' fees, suffice it to say that plaintiffs have not proven any monetary loss caused by defendants' activities. On the contrary, the evidence affirmatively shows a steady economic growth on the part of both plaintiffs. Nor has defendants' conduct herein amounted to the willful pirating of a valuable and long-established commercial name. E. g., Tiffany v. The Boston Club, d/b/a Tiffany's, 231 F. Supp. 836, 845 (D.Mass.1964). This litigation results more from the economic collision caused by the normal expansion of the sales territories of both parties, each of whom began its expansion independently of the other. See Taussig v. Wellington Fund, Inc., 313 F.2d 472, 481 (3 Cir. 1963); Allen v. Standard Crankshaft & Hydraulic Co., 231 F.Supp. 301, 303 (W.D.N.C.1964).

33. I rule that this is not a case in which it is appropriate to order an ac-

counting or to award money damages or an attorney's fee.

34. Counsel for plaintiffs is directed to file a proposed form of decree consistent with this opinion within ten days from the filing hereof.